STATE, *ex rel.* FIRST STATE SAVINGS BANK OF MORENCI, MICHIGAN, *et al.,* v. J. E. DuPUIS, *et al.*

165 So. 66.
Division A.
Opinion Filed December 12, 1935.

*C. L. Chancey,* for Plaintiffs in Error;

*Brown & Wood* and *John E. Holland,* for Defendants in Error.

DAVIS, J.—Plaintiffs in error were relators in the court below wherein they were denied a peremptory writ of mandamus directed to defendants in error, J. E. DePuis, John E. Holland and F. M. Soar, as and constituting the Board of Supervisors of Little River Valley Drainage District, requiring and commanding said Supervisors to advertise for sale and sell, as provided by Section 12 of Chapter 12078, Acts 1927, General Laws of Florida (Amending Article I, Chapter 3, Title 7, Comp. Gen. Laws Fla. 1927), all of the lands in said Little River Valley Drainage District, the title to which had become vested in said District for, or because of, the non-payment of drainage taxes levied and assessed by said District for the outstanding bonds of said District, of which relator was a holder to the extent of $20,000.00 worth of said bonds, part matured and part unmatured, but all in default as to either principal or interest. On writ of error they seek a reversal of the judgment with directions to the court below to award the peremptory writ as prayed for.

Little River Valley Drainage District was created and established under the general drainage laws of Florida, being Article I of Chapter 3, Title 7, of the First Division of the 1927 Comp. Gen. Laws, as amended by Chapter 12078, Laws of Florida, Acts of 1927.

Under the authority of the foregoing statutes, the District issued its series of $275,000.00 of negotiable coupon bonds dated June 1, 1927. Relators became the holders and owners of $20,000.00 of these bonds, $5,000.00 of which

matured on June 1, 1932, $5,000.00 of which matured on June 1, 1933, the remaining $10,000.00 of bonds being yet unmatured at the time this proceeding was instituted. No interest has been paid on the past due bonds since maturity. The interest coupons which matured June 1, 1933, on the five (5) bonds due upon that date, as well as interest coupons which matured on and subsequent to December 1, 1932, on the unmatured bonds remained unpaid when the petition for alternative writ of mandamus was filed.

Section 12 of Chapter 12078 provides:

"Sec. 12. When land is purchased by the Tax Collector for Little River Valley Drainage District, as herein provided, the certificate shall be issued as of the date of sale, in the name of said District, and if the land is not redeemed on or before two years from the date of such certificate, as herein provided, the title to the same shall immediately vest in the said Little River Valley Drainage District, without the issuance of any deed, as provided in other cases, and the certificate held by the said District shall be evidence of the title of the said District to the said land. The Board of Supervisors may sell and convey the said lands by deed at the best price obtainable therefor, provided such price shall not be less than the amount of drainage taxes upon said lands, which shall have become due and payable thereon pursuant to the provisions of this Act at the time of such sale; and provided further that no such land shall be sold by the said Board until four weeks' notice of the intention to make said sale shall be published once each week in a newspaper published in the county in which the lands so to be sold may be situated. The Board may reject any and all bids offered for such lands, and may thereafter sell the same at any time without any further publication of notice; and provided further that after the expiration of the period of redemption

herein allowed, the said Board may, in its discretion, sell any parcel of land the title to which shall have vested in the District by reason of tax sales to the person who was the owner of said lands at the time of such tax sale or sales, his heirs or assigns, without the publication of any notice upon the payment of an amount equal to all taxes due upon said lands and all costs and expenses incurred in connection with said sale and conveyance, including all penalties accrued thereon. When any such sale is made to the owner of said land at the time of the tax sale it shall not be necessary to publish notice of intention to make the same, but before making any such sale the Board shall require proof by affidavit and certificate of an abstracter showing that facts exist which authorize the making of said sale in accordance with this paragraph of this Act, and such proof shall be filed in the office of the Secretary of said District and shall become a part of the permanent records of the District.

"Deed of conveyance executed by the said Board of Supervisors to such lands shall be signed by the President of said Board and attested by the Secretary of the District, under the seal thereof, and shall vest in the grantee of such deed the fee simple title and estate in and to the lands therein described, free from all liens of any character except such liens as may exist for State and County taxes and other taxes of equal dignity."

The alternative writ alleges that instead of advertising for sale and selling lands title to which have become vested in the District under the above provisions of Chapter 12078, *supra,* the "Board of Supervisors have adopted and for considerable time last passed and particularly during the past twelve months, pursued and are still pursuing the policy or practice of refusing to advertise for sale or sell said

lands and instead of so doing, permitting the owners of said land, or persons claiming to be the owners, to re-acquire title thereto by the delivery to said Board of Supervisors or to the Treasurer thereof, of bonds of said series, whether due or not due, and of interest at par in an amount equalling the amount of said taxes, interest and costs."

A motion to quash the alternative writ, the commands of which were substantially as hereinbefore indicated, was granted and judgment final consequent thereon was duly entered.

While the provisions of the statutes hereinbefore cited by plaintiffs in error in support of their right to relief of the character sought by them in the court below are undoubtedly mandatory in their general requirements, and are not merely directory as argued by counsel for defendants in error, there is none the less a modicum of executive discretion definitely vested in the Board of Supervisors of said Little River Drainage District as to *when and under what individual circumstances* they shall advertise for sale, and attempt to sell and convey, any particular parcel of land, the tax title to which may have become in due course absolutely vested in the Board of Supervisors for that purpose under the statute.

And, unless it be alleged and shown in a case like this, that the discretion of the Board of Supervisors within the foregoing limitations, is being abused by the Board's willful failure and neglect to advertise for sale, or attempt to sell, a particular parcel or tract of tax land for which a prospective purchaser actually exists who will likely bid therefor in cash the best price obtainable therefor not less than the amount of drainage taxes then due on the lands, it cannot be said that the plan of procedure contemplated by the statute is being deliberately disregarded by a mere neglect to ad-

vertise for sale or attempt to sell, since it was not the object of the law that an indiscriminate and general liquidation of the tax lands held by the Board of Supervisors should be mandatorily required to be undertaken in general terms, regardless of the likelihood that such course of procedure would result in a fruitful disposition of the lands held by the District as assets pledged to be sold to the best advantage of both creditors and taxpayers of the district, should defaults and delinquencies be persisted in by the owners thereof past the allowable period of redemption.

The alternative writ of mandamus applied for and issued in this case was properly quashed as too general in its requirements and as not being predicated upon sufficient allegations to show that if advertised and attempted to be sold as prayed for, the resultant sale would be attended by prospective bidding for the purchase of the lands under the terms of the statutes, thereby demonstrating that the alleged failure to advertise, and offer for sale, as complained of, amounts to more than a mere harmless failure to exercise a power vested in the Board of Supervisors to be exercised under appropriate circumstances for relator's benefit.

Mandamus lies for the correction of an abuse, either in the exercise of, or the unjustified failure to exercise, statutory administrative powers vested in boards, bureaus and commissions for the special advantage or benefit of the particular relator complainant who seeks by his alternative writ a correction of such abuse, but the allegations of the writ must make the abuse clearly to appear and the commands of the writ should be limited to such particular requirements as will amount to a remedy for the situation complained of, and no more than that. State of Florida, *ex rel.* West Flagler Amusement Co. v. State Racing Commission, de-

cided at the present term; Pinellas Kennel Club, Inc., v. State Racing Commission, 116 Fla. 143, 156 Sou. Rep. 317.

Judgment affirmed.

WHITFIELD, C. J., and BROWN, J., concur.

ELLIS, P. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.